RECEIVED
DEC 3 0 2013
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

c

JAMES O. FLETCHER

CIVIL ACTION NO. 1:13-cv-0579
Section "P"

VERSUS

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

JERRY GOODWIN, ET AL.

REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2254 by pro se petitioner James O. Fletcher (Fletcher)(Doc. 1). Fletcher contests his 2005 conviction on three counts of aggravated rape following a 2005 bench trial held in the Twelfth Judicial District Court, Avoyelles Parish, State of Louisiana (12th JDC) before the Honorable William J. Bennet. Fletcher received a sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence on each of the three counts. The sentences were ordered to run concurrently.

Following his conviction, Fletcher sought direct review from the Louisiana Third Circuit Court of Appeal ("Third Circuit"). On April 5, 2006, the Third Circuit affirmed both the conviction and the sentence. Fletcher then sought a writ of certiorari from the Louisiana Supreme Court but the writ was denied on December 8, 2006.

On August 16, 2007, Fletcher timely filed a Uniform Application for Post-Conviction Relief with the 12th JDC. In response to the denial of the application, Fletcher filed a motion to vacate which the 12th JDC granted. The court recalled, vacated and set aside the previous denial and Fletcher filed a First Supplemental and Amending Application for Post-Conviction Relief. A hearing was held regarding Fletcher's claims and on August 25, 2010, the 12th JDC denied Fletcher's application for post conviction relief and the amendment thereto.

On December 28, 2010, Fletcher sought a writ of review from the Third Circuit which was denied. Thereafter, he sought supervisory and/or remedial writs from the Louisiana Supreme Court and that request was denied.

Fletcher then timely filed his application for writ of habeas corpus[1] with this court on March 12, 2013. In the application, he raised two grounds for habeas relief: insufficient evidence and ineffective assistance of counsel.

Rule 8 Resolution

This court is able to resolve the merits of this *habeas corpus* petition without the necessity of an evidentiary hearing because

[1] 251 days passed between the time the judgment became final and Fletcher's filing of his application for post-conviction relief in the 12th JDC. Another 88 days passed between the time the Supreme Court denied review of the post-conviction determination and the filing of the instant petition for habeas corpus. As only 339 days passed without being tolled, the petition is deemed to be timely filed.

there is no genuine issue of material fact that is relevant to the petitioner's claims and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treatises of the United States. 28 U.S.C. §2254(a).

Under 28 U.S.C. §2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(1) and question of fact are reviewed under

Section 2245(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den. 534 U.S. 885 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding the state court decision applied clearly established federal law erroneously. The court must conclude that such application was also unreasonable. Id.

When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under Section 2254 unless the harmless determination itself was unreasonable. Mitchell v. Esparanza, 540 U.S. 12 (2003). Moreover, in Section 2254 proceedings, a federal court must assess the prejudicial impact of constitutional error in a state-court

criminal trial under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (2007). The Court should treat the error as if it affected the verdict and the State bears the burden of persuasion as to the harmlessness of the error. Fry, 2007 WL 1661463 at *6.

Facts

The facts of this case, as set forth by the Third Circuit, are as follows:

> The record indicates that O.F. was born on September 28, 1990 and is the son of F.B. and the defendant. When the couple divorced in 1998, O.F. went to live with his mother. The defendant shared joint custody of O.F. and had visitation every other weekend. The defendant testified that in April 2003, O.F. begged the defendant to "take him in," which he did. He further testified that O.F. told him that his stepfather was physically abusing him and on one occasion, slapped him so hard that he wet his pants. The defendant immediately sought custody of O.F., and a hearing on the matter was held on May 30, 2003. The trial court granted joint custody to both parents with the defendant designated as the domiciliary parent.
>
> O.F. moved in with the defendant, his wife, C.F. and their three children. O.F. testified that they resided in a two bedroom house and that he occupied one room with the defendant and C.F. occupied the other. He further testified that during the months of his stay at the defendant's house, the defendant's stepchild from a previous marriage came to live with them as well as C.F.'s oldest son. According to O.F., when he first moved in "everything was all nice[.]" Nevertheless, he stated that the defendant and C.F. argued frequently and that these arguments would sometimes turn violent. O.F. also alleged that the defendant sexually abused him on three different occasions.
>
> O.F. described the first incident that happened in May 2004. O.F. testified that when the defendant and C.F.

began to argue, he went into his bedroom and played video games. The defendant entered his bedroom and closed the door, although O.F. was unsure if it was locked. O.F. testified that the defendant asked him if he wanted to do something, to which O.F. replied: "What?" According to O.F. the defendant grabbed him and threw him down on the bed. O.F. was lying on his stomach, and the defendant was on top of him. He remembered the defendant yelling him and asking him "what you gonna do now and stuff like that." O.F. stated: "I thought I'd done something wrong because he [was] all fussing and hollering." O.F. testified the defendant pulled his shorts off and "stuck his private in [him]" moving it back and forth. The defendant did not say anything. O.F. also testified that he knew that the defendant had ejaculated because he "felt something go inside of [him] and he saw some "white looking gunk" draining out of him and on his bed."

According to O.F., the defendant left the room without saying anything, locked the door, and "took a shower and went to bed like nothing had happened." O.F. explained that he did not bleed that night but he was hurting and that the next morning, his "butt was sore raw and [he] was bleeding real bad." O.F. testified that he did not tell anyone about the incident because he did not know what happened and "every time [he] would try to say something, [the defendant] was like I got full custody of you[. Y]ou're mine now."

According to O.F., the second incident occurred in July 2004. The defendant and C.F. were arguing, and O.F. retreated to his bedroom. O.F. stated that the defendant walked into his room with a tube of what he described as "lube" or jelly in his pocket. Without saying anything, the defendant pulled the covers off of O.F. grabbed him by his neck, and "stuck his worm" in his "butt". O.F. testified that the defendant ejaculated because he noticed that the "same white, dripping gunk was there." He also testified that he was bleeding and was not allowed to go to the bathroom.

The third and final incident occurred around August 2004. The defendant and C.F. were arguing. According to O.F.'s testimony, he was in his bed going to sleep when the defendant walked in and closed the door. O.F. remembered that the defendant did not have any lube with him. He testified that the defendant grabbed him by his neck and his face was down in the pillow. He heard the

defendant's jeans unzip, and the defendant stuck "it" inside of him. O.F. believed that the defendant was moving faster because "he was trying to hurry up and get out and go back and act like nothing was happening." According to O.F. the defendant ejaculated because he saw the same substance he had seen after the first two incidents. He testified that he bled from his butt.

On cross-examination, O.F. admitted that the defendant did not threaten him during any of these encounters. However, he explained that he felt threatened because of the "violence in the house", the presence of a gun in the house and because on "one occasion [C.F.] came at [the defendant] with a knife and [he] took her and swung her around the house." O.F. also explained why he did not tell anyone about the incidents. According to O.F., the defendant made various threats to him the day after the incidents occurred. The defendant threatened to beat him, kill him and his mother, and kill his brothers if he told anyone. He also stated that the defendant would prevent him from telling of the sexual abuse by stating that"they won't believe you. You live under my house, I have full custody and you wanted to live over here." O.F. was also concerned about how his mother would handle his disclosure. He commented: "[I]t's hard enough to tell a complete stranger, someone that you just met much less telling someone you've known your whole life. I mean, no parent should have to hear this." He also stated that his mother has "a bad heart" and he was worked about her health.

O.F. stated that his mother was concerned about him because he was depressed, he would not talk to her, and his grades dropped. F.B. began taking O.F. to see Ms. Jane Hyde, a licensed clinical social worker to help O.F. with his troubles. O.F. first met with Ms. Hyde on October 12, 2004. O.F. testified that some time after this visit, he began bleeding from his butt and that he and F.B. did not know why. Upon the advice of Ms. Hyde, F.B. brought O.F. to the doctor where he was examined by Ms. Clara Coutee, a nurse practitioner. According to the record, Ms. Coutee found that O.F.'s "rectum was dilated like that of a 70[year] old person." In her report, Ms. Coutee noted under the rectal exam loose, dilated, anal sphincter, able to insert two fingers, large amount of hard stool in ampulum, or the base of the rectum, hemorrhoids." Ms. Coutee referred O.F. to a pediatric gastroenterologist for evaluation of rectal bleeding and

dilated sphincter. Because Ms. Coutee opined the rectal bleeding may have been caused by sexual abuse, she spoke to someone at the Office of Child Support about the matter. The district attorney's office was also notified.

On October 29, 2004, O.F. was examined by Dr. Husam Sukerek, a pediatrician and pediatric gastroenterologist. Dr. Sukerek found that O.F. had normal anal tone and that a test for fecal occult blood (blood that cannot be seen by the naked eye) was negative. He also found minimal redness which he explained is common in thirty percent of children. Dr. Sukerek diagnosed O.F. with incopreсis, which is the inability to control bowel movements. He admitted on cross examination that there is nothing in his findings that could dispute that O.F. was sexually abused. Dr. Sukerek testified that because child abuse was a concern, he recommended evaluation by a child sexual abuse expert.

Ms. Julie Tandeskie of the Children's Advocacy Center interviewed O.F. on November 5, 2004. Ms. Tandeskie videotaped her interview with O.F. in which he revealed that the defendant sexually abused him on various occasions. O.F. described the incidents to her. After reviewing the tape, detectives arrested the defendant for two counts of rape.

The Office of Child Support and the district attorney's office referred O.F. to Dr. L.J. Mayeux, the coroner of Avoyelles Parish. On December 10, 2004, Mayeux interviewed and examined O.F. According to Dr. Mayeux, O.F. recounted three incidents of sexual abuse. Dr. Mayeux's examination of O.F. revealed a loose rectal sphincter for a child his age with very loose tone. He explained that a bowel movement cannot cause the sphincter to become loose and the rectal area heals after constipation and bowel movements. Dr. Mayeux stated that O.F.'s rectal bleeding is consistent with anal sexual intercourse. He found that O.F. also had redness and tenderness in the para rectal region. Dr. Mayeux testified that he could not say with any degree of medical certainty that the redness was related to the allegations of abuse that occurred approximately four to five months earlier. Nevertheless, based on the consistency between the physical findings that the reports O.F. gave him, Dr. Mayeux concluded that O.F.> was sexually abused by the defendant.

> Ms. Hyde, O.F.'s counselor, testified that O.F. reported the abuse to her on January 19, 2005 after eleven visits. According to Ms. Hyde, O.F. was only able to describe one incident to her.
>
> On December 16, 2004, the defendant was indicted by a grand jury for three counts of aggravated rape. Following a bench trial, the trial court found him guilty as charged. The defendant's motion for new trial was denied, and the trial court sentenced him to the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on each count. The sentences were ordered to run concurrently with each other. The defendant subsequently filed a motion for new trial based on newly discovered evidence, which was denied by the trial court.

(Doc. 9-11, p.2-5).

## Law and Analysis

### Procedurally Barred Claim

To the extent Fletcher contends the trial court erred in allowing Dr. Mayeux and Ms. Hyde to testify as to the truthfulness and credibility of the victim, the claim cannot be addressed as it is procedurally barred. As stated by the Third Circuit, the claim was "abandoned by Realtor at the evidentiary hearing on the application for post-conviction relief; thus[,] the trial court did not rule on these issues." This was the last reasoned opinion of a state court addressing petitioner's claim and, because that court specifically denied to address the merits for failure to pursue the claim in the lower court[2], the Louisiana Supreme Court's subsequent

---

[2] As is regularly done by Louisiana courts, the Third Circuit implicitly relied upon the procedural default codified in La.C.Cr.P. art. 930.4 to bar the claim.

one-word writ denial is presumed to have been based upon the same procedural default. See Ylst v. Nunnemaker, 501 U.S. 797, 803(1991) (Where there has been a reasoned state court judgment which explicitly rejects the federal claim on state procedural grounds, subsequent unexplained judgments upholding the previous judgment or rejecting the claim are presumed to rely upon the same ground).

"[W]hen a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny *habeas* relief because the of the procedural default." Cook v. Lynaugh, 821 F.2d 1072, 1077 (5th Cir. 1987); Hughes v. Dretke, 412 F.3d 582, 592-93 (5th Cir. 2005). A petitioner may establish good cause and overcome the procedural default by showing objective external factors which prevented him from raising the instant claim previously. U.S. v. Flores, 981 F.2d 231, 235-36 (5th Cir. 1993). "Cause" under the cause and prejudice standard must be something external to the petitioner. Something that cannot be fairly attributed to him. Murray v. Carrier, 477 U.S. 478 (1986); Mowin v. Scott, 67 F.3d 100, 102 (5th Cir. 1995). A showing that the factual or legal basis for a claim was not reasonably available to counsel or that some inference by officials made compliance impracticable, would constitute cause under this standard." Murray 477 U.S. at 488 (internal citations omitted).

"The habeas petitioner must show 'not merely that the errors

at ... trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 494 quoting U.S. v. Frady, 456 U.S. 152, 170 (1982). Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. Barrientes v. Johnson, 221 F.3d 741, 769 (5th Cir. 2000).

Fletcher's claim is couched as one of ineffective assistance of counsel. More specifically, that his counsel failed to object to the use of testimony in that manner. While ineffective assistance claims are not generally brought on direct appeal, they can be brought when post-conviction relief is sought. Fletcher did just that by asserting claims of ineffective assistance of counsel in his application for post-conviction relief. However, he failed to assert this particular claim and no reason or "cause" for doing so has been provided. Accordingly, the finding by the state courts that the claim is procedurally barred stands.[3]

The only other way for a procedural default to be excused is for a petitioner to show a fundamental miscarriage of justice would result from a failure to entertain the claim, i.e. the petitioner

---

[3] When the petitioner fails to present good cause, there is no need to examine the prejudice prong. However, it is worth noting that Fletcher would not be able to establish prejudice as he has not presented any evidence that the failure to object actually disadvantaged him.

must make a colorable showing of actual innocence. US. v. Flores, 981 F.2d 231, 235-36. Also, McCleskey v. Zant, 499 U.S. 467, 495 (1991). A fundamental miscarriage of justice occurs only in a very narrow class of cases where a constitutional violation probably resulted in the conviction of an innocent person. McCleskey, 499 U.S. at 495. Also, Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992).

Fletcher failed to establish actual innocence through allegations or evidence. There is nothing to suggest much less prove that the testimony of Dr. Mayeux and Ms. Hyde in fact bolstered the victim's credibility. In fact, if you were to exclude their testimony, sufficient evidence remained to support the judge's finding that the victim was a credible witness. Accordingly, it would not be a "fundamental miscarriage of justice" not to take up his claim.

Insufficient Evidence

Fletcher contends the court was without sufficient evidence to find him guilty of aggravated rape. Specifically, he contends that the only evidence offered at trial was the defendant's testimony which contained the following lies: he, the victim, reported the sexual abuse to a teacher and an OCS worker and Fletcher locked his bedroom door on all three occasions of sexual abuse.

"Habeas relief under section 2254 on a claim of insufficient evidence is appropriate only 'if it is found that upon the record evidence adduced at trial no rational trier of fact could have

found proof of guilt beyond a reasonable doubt.'" West v. Johnson, 92 F.3d 1385, 1393 (5th Cir. 1996), quoting Jackson v. Virginia, 443 U.S. 307, 322-26 (1979). See also, Dupuy v. Cain, 201 F.3d 582, 589 (5th Cir. 2000); Cupit v. Whitley, 28 F.2d 532, 542 (5th Cir. 1994), cert. denied 513 U.S. 1242 (1997).

To apply this standard, the court looks to the elements of the offense as defined by state substantive law. Donahue v. Cain, 321 F.3d 1000, 1004 (5th Cir. 2000). All credibility choices and conflicting inferences are to be resolved in favor of the verdict. A determination of a factual issue made by a State court shall be presumed correct, and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. Ramirez v. Dretke, 398 F.2d 691, 693 (5th Cir. 2005). Further, where there has been a thoughtful review of the sufficiency of the evidence by a state appellate court, that court's findings are entitled to great weight. Jackson, 433 U.S. at 322 n. 15.

Fletcher was convicted on three counts of aggravated rape. The elements of that crime are set forth in Louisiana Revised Statute 14:42. The statute provides in pertinent part:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
>
> (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
>
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.
>
> (5) When two or more offenders participated in the act.
>
> (6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance....

As the trier of fact, the judge was tasked with determining whether Fletcher engaged in conduct that fit the elements of this crime.

At trial, the prosecution presented testimony of the victim and various witnesses as well as medical evidence supporting the victim's allegations. This evidence collectively set forth conduct by Fletcher which met the elements of aggravated rape. The victim testified that Fletcher entered the victim's room on three different occasions. Each time, Fletcher had just argued with his wife and each time he grabbed the victim's neck and forced himself upon the victim. The victim further testified that while no verbal threats were made during any of the sexual acts, he still felt threatened because of the "violence in the house", the fact there was a firearm in the home, because Fletcher had threatened the victim with a knife on a prior occasion and because Fletcher threatened to harm him and/or his family members if he told anyone.

Though the defense called witnesses to testify to the fact the victim lacked credibility, the judge ultimately found otherwise. He weighed all of the evidence, including the conflicting statements made by the victim before and during the trial and found the victim to be "entirely credible" and Fletcher guilty of the crime as charged.

The record evidence, including the victim's testimony, the judge's statements regarding the victim's credibility and the medical evidence supporting the allegations, fully supports the finding reached by the judge. Any other rational trier of fact would have also found proof of guilt beyond a reasonable doubt. Accordingly, Fletcher's claim of insufficiency of evidence lacks merit.

Ineffective Assistance of Counsel

Fletcher's claim for ineffective assistance of counsel alleges his counsel failed to investigate issues and call witnesses.

Fletcher alleges his attorney failed to interview witnesses, investigate or attempt to corroborate testimony regarding whether the victim's bedroom door closed, whether the victim made a statement to a teacher at school and/or an employee of "OCS in Marksville" and whether an OCS report from 1998 showed the victim was manipulative and untruthful.

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted

defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense"). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir.1194) and cases cited therein. Also, U.S. v. Segler, 37 F.3d 1131, 1136 (5th Cir. 1994).

Failure to Investigate

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir.1993), citing Strickland v. Washington, 466 U.S. 668, 691 (1984). A determination of whether an investigation is reasonably adequate depends upon a variety of factors, including the number of issues

in the case, the relative complexity of those issues, the strength of the Government's case, and the overall strategy of trial counsel. Baldwin v. Maggio, 704 F.2d 1325, 1333 (5th Cir.1983), cert. den., 467 U.S. 1220 (1984). A defendant or petitioner who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. Nelson, 989 F.2d at 850, citing United States v. Green, 882 F.2d 999, 1003 (5th Cir.1989). Under Strickland, even where trial counsel has failed to adequately investigate a case, a defendant must demonstrate that he has been prejudiced by his counsel's failure. See Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987). To show prejudice, the petitioner must prove that an alleged breach of his attorney's duty to investigate resulted in an actual and substantial disadvantage to the course of his defense. Baldwin, 704 F.2d at 1333.

Fletcher’s claim his counsel failed to investigate relates specifically to the victim’s claims that he reported the sexual abuse to a teacher and an OCS worker and to counsel’s failure to locate the 1998 OCS report. At the post-conviction relief hearing, Fletcher’s counsel testified an investigation was not conducted prior to trial because that information was not learned until trial. By that time, a thorough investigation could not be conducted and calling the teacher and/or OCS worker to testify

would be a risk as the content of their testimony was unknown.

Counsel also advised that he conducted an investigation into the 1998 report by requesting the victim's entire OCS file. The file was received but there was no report from 1998 nor any note indicating OCS found the victim to be manipulative. As this was the only lead into the issue, the investigation was undertaken and concluded.

Even if counsel had failed to investigate these matters, Fletcher fails to allege, much less prove that he was prejudiced and/or the outcome of the trial would have differed.

Uncalled Witnesses

Complaints regarding uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of how a witness would have testified is speculative. Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. denied, 124 S.Ct. 2160 (2004). Also, Boyd v. Estelle, 662 F.2d 388, 390 (5th Cir. 1981). Where the only evidence of missing witness testimony is from the defendant, the courts view claims of ineffective assistance of counsel with great caution. Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001), citing Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir. 1986), cert. denied, 479 U.S. 1030 (1987). Unless a petitioner provides the court with affidavits (or similar matter) from the alleged favorable witnesses

suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice.

Counsel explained that he subpoenaed witnesses with knowledge about the condition of the door but felt the issue was adequately addressed by Fletcher and his wife during their testimony. Thus, there was no reason to call additional witnesses. Additionally, counsel learned during the trial (not before as Fletcher would have you believe) that the victim told a teacher and a worker at OCS that Fletcher raped him. Again, counsel's decision not to subpoena those witnesses was due to the fact he could not conduct a thorough investigation and would not know the substance of their testimony. Finally, counsel advised that he did not seek a subpoena for a witness to contradict the claim that the APSO visited the home 30 to 40 times because the statement was ridiculous and counsel felt the judge would also see the statement as inaccurate.

Counsel adequately explained why he chose not to call certain witnesses and his decision was sound trial strategy. However, the burden is not on counsel to prove he was effective. Rather, it is on Fletcher to show that counsel was ineffective. Fletcher failed to provide the names of the witnesses who he contends should have been called; he failed to provide any evidence of the content of their testimony; and, he failed to show how he was prejudiced by the failure to call them as witnesses. Thus, he failed to carry his burden of proof.

## Conclusion

**IT IS HEREBY RECOMMENDED** that Fletcher's petition for writ of habeas corpus (Doc. 1) be **DENIED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)© and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this 30th day of December, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE